UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

NEWTON GOMEZ, an individual,

    Plaintiff,

v.

TEAM AMERICA MIAMI, INC., a New York Corporation,

    Defendant.

_____/

## COMPLAINT

Comes now NEWTON GOMEZ on behalf of himself hereby sues TEAM AMERICA MIAMI, INC., and alleges as follows:

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of national origin, Hispanic, and race, and to provide appropriate relief to the Plaintiff.

## JURISDICTION, PARTIES, AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §451, 1331, 1337, 1343, 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C §2000e-5(f) (1) and (3), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, 28 U.S.C. §§ 1331, 1367 and 1343.

3. The employment practices alleged to be unlawful were committed in Miami-Dade County, Florida and within the jurisdiction of the United States District Court for the Southern District of Florida. Venue is proper pursuant to 28 U. S. C. § 1391 and 42 U.S.C. § 2000(f)(3).

4. Plaintiff, NEWTON GOMEZ, is an individual *sui juris* residing in Miami-Dade County, Florida.

5. At all relevant times, Defendant, TEAM AMERICA MIAMI, INC., has continuously done a significant amount of business in the state of Florida and within Miami-Dade County, Florida, has maintained an office in Miami-Dade County, and has continuously had at least fifteen (15) employees.

6. At all relevant times, Defendant, TEAM AMERICA MIAMI, INC., has continuously been an employer engaged in an industry affecting interstate commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §2000e-(b), (g) and (h).

7. More than thirty (30) days prior to the institution of this lawsuit, NEWTON GOMEZ, filed a charge with the Commission alleging that the Defendant violated Title VII of the Civil Rights Act of 1964, as amended.

8. On October 19, 2020, the Equal Employment Opportunity Commission issued a Right to Sue Letter/Notice to the Plaintiff. Attached hereto as **Exhibit A**.

9. All conditions precedent to the institution of this lawsuit have been timely fulfilled.

## STATEMENT OF FACTS

10. NEWTON GOMEZ (hereinafter "Plaintiff" or "GOMEZ") was employed by the Defendant, TEAM AMERICA MIAMI, INC. (HEREINAFTER "Defendant" or "TEAM AMERICA"), during all times material to this EEOC complaint and resulting Action from or about March 2014 until February 28, 2020.

11. GOMEZ held the title of Team Leader for Spain and South America and Revenue Analyst; he held both titles concurrently throughout the course of his employment with TEAM AMERICA

12. GOMEZ began his career with TEAM AMERICA in their New York office and in August of 2014 he made the move from TEAM AMERICA's New York office to its South Florida

Office located at 1849 James Avenue, Miami Beach, Florida and by agreement, he worked from home.

13. Plaintiff GOMEZ's national origin in Dominican. Plaintiff GOMEZ also identifies as Black.

14. At all material times, GOMEZ was one of the few non-Italian or Italian descended employees, and among an even smaller subsect of Black employees.

15. Management for the company was comprised of white persons who were Italian or of Italian descent.

16. Throughout his employment with TEAM AMERICA, GOMEZ was subjected to disparate treatment from his white counterparts and differently from the Italian and Italian Americans counterparts.

17. TEAM AMERICA, as part of its company customs, rewarded employees with a pay supplement upon the employee reaching the ten (10) and fifteen (15) year anniversary marks, respectively.

18. When GOMEZ reached his ten (10) year mark he expected that he would receive the same pay supplement paid out to other employees, specifically FIVE-THOUSAND DOLLARS ($5,000.00).

19. However, GOMEZ never received the FIVE-THOUSAND DOLLARS ($5,000.00) or any other pay supplement marking his commitment to TEAM AMERICA, unlike his white, and white Italian American counterparts.

20. When GOMEZ approach the General manager regarding the situation and she simply advised GOMEZ that the company does as it pleases.

21. The following day Mr. Enzo, TEAM AMERICA's CEO, conducted a general meeting where he stated that he gives bonuses to whomever he wants and that, TEAM AMERICA is his company. This was directed to the Plaintiff who had just asked for his bonus. TEAM AMERICA's behavior served to publicly humiliate Plaintiff.

22. When the company struggled financially in May of 2017, GOMEZ was targeted for a reduction in pay which GOMEZ was forced to agree to at the time for fear of being terminated.

23. GOMEZ was menaced by TEAM AMERICA to think carefully before making a decision on the pay cut. This was a tacit threat direct at Plaintiff.

24. TEAM AMERICA's Human Resources Department advised GOMEZ that if he refused to reply it would be deemed that he did not agree, and adverse action would be taken against him.

25. Meanwhile, the white Italian and white Italian-Americans at the company did not receive a salary reduction, specifically white employees and/or employees of Italian American origin.

26. As part of the reduction, GOMEZ was promised that the reduction would only be temporary and once the financial difficulties passed, GOMEZ's salary would be increased.

27. At that point, GOMEZ had spent nine (9) years without any raise. Shortly after targeting GOMEZ for a reduction in pay, TEAM AMERICA hired new employees.

28. GOMEZ never received the promised return to his previous salary, even though after six (6) months of GOMEZ's pay cut, the company began to improve its financial situation enough to provide a raise to the entire company with raises across the board on or about March 4, 2019.

29. GOMEZ received a 2% increase while most employees received a 4% increase or more on or about March of 2019. Most of the white, Italian Americans received the higher percentages. Even with the increase, it did not return GOMEZ to his previous rate of pay, meaning he was earning less than his similarly situated white, Italian and Italian-American colleagues.

30. GOMEZ believes that he was singled out for this pay cut based on his race and national origin as the only Dominican and person of color who received such a pay cut.

31. The disparate treatment of GOMEZ persisted, and he was continually singled out on the basis of his race, ethnicity and national origin.

32. GOMEZ's manager, Nicole Bosco, would single out GOMEZ in e-mail communications copying Human Resources, questioning his whereabouts. This was not done to his white, Italian or Italian-American counterparts.

33. This treatment was constant and continued up to the date of GOMEZ's termination.

34. Ms. Bosco did not treat white and/or Italian American employees the same and in fact treated them more favorably.

35. TEAM AMERICA's unlawfully discriminatory conduct toward GOMEZ included micromanaging GOMEZ in a bad faith attempt to find fault in his work and performance, this treatment was disparate as compared to his white, Italian and Italian-American counterparts who were not managed or treated in this manner.

36. For example, even in instances when GOMEZ had replied to various e-mail exchanges where Ms., Nicole Bosco was copied, Ms. Bosco would still send e-mail correspondence, copying human resources, inquiring as to whether GOMEZ was working, humiliating GOMEZ and subjecting him to a different standard from his white, Italian and Italian American co-workers.

37. GOMEZ was subjected to disparate treatment in the enforcement of workplace policies.

38. On or about January 15, 2020 when GOMEZ called out of work for a sick day, Ms. Bosco insisted that GOMEZ continue working as he was being paid for the day, despite the fact that the company regularly paid his white, Italian and Italian American co-workers when they called in sick.

39. When GOMEZ approached human resources with his concerns that Ms. Bosco was forcing him to work on days he should otherwise have off, human resources advised GOMEZ that he must do as with Ms. Bosco required.

40. TEAM AMERICA had a "first come, first served" policy when it comes to vacation requests among the employees; and if one employee requested a holiday in the previous year that employee must give fellow employees the opportunity to request the holiday.

41. Accordingly, GOMEZ followed the policy and waited for his colleagues to request their vacation days in 2020, prior to requesting his.

42. When the vacation requests for his colleagues were made, on or about February 18, 2021 GOMEZ requested a vacation period from December 28, 2020 through January 5, 2021.

43. Ms. Bosco denied GOMEZ's vacation request stating that December 31, 2020 was a holiday.

44. In an e-mail exchange with Ms. Bosco, where human resources was also copied, GOMEZ advised Ms. Bosco that TEAM AMERICA did not consider December 31 a holiday and after consulting the employee handbook, he explained that December 31 was not a holiday pursuant to the employee handbook and provided a copy of the holidays, for Ms. Bosco reference and to clarify any confusion.

45. As a result of the exchange, Ms. Bosco declared that going forward December 31 was a holiday and denied GOMEZ's vacation request. No white or white Italian/Italian Americans were subjected to such an inquiry or policy in regard to vacation dates submitted on dates that were not designated as holidays in the employee handbook.

46. GOMEZ again contacted human resources concerned that Ms. Bosco was applying a different holiday policy to him and was advised that Ms. Bosco had the discretion to do so, as his manager.

47. Shortly after the exchange between Ms. Bosco and GOMEZ regarding the company vacation policy, GOMEZ was terminated. On February 28, 2020, GOMEZ received a letter from TEAM AMERICA as formal notice of his termination.

48. Prior to that, GOMEZ received a message via SMS text from TEAM AMERICA's President, Enzo Perretta requesting that GOMEZ call him.

49. Once he did, Mr. Perretta informed him of the company's decision to terminate his employment.

50. TEAM AMERICA unlawfully treated GOMEZ detrimentally different based on his race, ethnicity and national origin.

51. GOMEZ was consistently subjected to disparate treatment throughout his employment with TEAM AMERICA, this disparate treatment of GOMEZ affected his salary, bonuses, and even the days he could request for time-off based on his being a Hispanic of Dominican origin and black.

52. TEAM AMERICA had a two-tiered system in terms of its applying and enforcing its employee handbook, one which would apply policies to GOMEZ based on his race and national

origin, and a different more favorable policy codified in its employee handbook for his white, Italian and Italian-American colleagues.

53. GOMEZ has suffered and continues to suffer damages, to include lost past and future income, and emotional damage, because of the prolonged and intentional unlawful discrimination he suffered at the hands of Defendant, TEAM AMERICA's, managers throughout his employment there.

## STATEMENT OF CLAIMS

## COUNT I-HOSTILE WORK ENVIRONMENT - DISPARATE TREATMENT

54. The Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 53 above as though fully set forth herein.

55. Since on or about August 2014, Defendant has engaged in unlawful employment practices at their establishment in Miami-Dade County, Florida, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting GOMEZ to a hostile work environment, based upon his Dominican national origin, Hispanic ethnicity, and his Black race. Defendant's conduct, the totality of which created the hostile work environment included but was not limited to:

    a. Failing to award GOMEZ the bonuses he was entitled to as an employee;

    b. Failing to fairly and adequately compensate GOMEZ;

    c. Treating GOMEZ as less trustworthy than his white, Italian and Italian-American counterparts, by questioning his whereabouts regularly, despite always receiving satisfactory answers;

    d. Applying different policies for time-off and vacations for GOMEZ as opposed to his white, Italian and Italian-American counterparts;

    e. different standards of performance, discipline, demotion and other adverse employment actions imposed on Dominican and Black employees; and

    f. Disparate treatment in terms and conditions of employment unfairly damaging (financially and psychologically) and detrimentally affecting GOMEZ.

56. The unlawful actions and employment practices detailed above in paragraphs 1 through 53 by Defendant, TEAM AMERICA, were intentional and were done with malice or with reckless indifference to the federally protected rights of Plaintiff GOMEZ.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, NEWTON GOMEZ, respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, their officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them, (1) from engaging in any employment practice which discriminates on the basis of national origin, (2) from maintaining a hostile work environment based on his Dominican national origin and his race; and (3) from any other employment practice which discriminates on the basis of national origin, Dominican, or race, or which facilitates, condones, or encourages national origin-based harassment, and/or retaliation against employees who oppose or complain about such discrimination and harassment;

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities and a non-hostile work environment for people of Dominican National origin and Black, and for employees who oppose or complain about discrimination, and which eradicate the effects of its past and present unlawful employment practices;

C. Order Defendant to make whole the Plaintiff by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to

reinstatement of the Plaintiff who were terminated, or a reasonable amount of front pay in lieu thereof;

D. Order Defendant to make whole the Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E. Order Defendant to make whole the Plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in amounts to be determined at trial;

F. Order Defendant to pay the Plaintiff punitive damages for intentional conduct that was committed with malice and/or reckless indifference to the federally protected rights of GOMEZ, and in amounts to be determined at trial;

G. Grant such further relief as the Court deems necessary and proper in the public interest; and

H. Award the Plaintiff reasonable attorney's fees and costs in this Action pursuant to federal law, to include Title VII of the Civil Rights Act of 1964, as amended; Title I of the Civil Rights Act of 1991; and 42 U.S.C. § 12205.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: January 7th, 2021.

                                          **GARCIA-MENOCAL & PEREZ, P.L.**
                                          *Attorneys for Plaintiff*
                                          4937 S.W. 74th Court
                                          Miami, Florida 33155
                                          Telephone: (305) 553-3464

Facsimile: (305) 553-3031
Primary E-Mail: ajperez@lawgmp.com
Secondary E-Mails: bvirues@lawgmp.com
aquezada@lawgmp.com; crodriguez@lawgmp.com

By: ___/s/ Anthony J. Perez_____
    ANTHONY J. PEREZ
    Florida Bar No.: 535451
    BEVERLY VIRUES
    Florida Bar No.: 123713